## BLAW v. WHITALL.

## WHITALL v. BLAW.

---

PATENTS; INTERFERENCE; ORIGINALITY; ESTOPPEL; PRELIMINARY STATE-
MENT; AMENDMENT; WAIVER.

1. The junior applicant in interference is entitled to an award of originality as against a senior applicant who, although claiming to have described the invention to, and employed, the former to make the drawings, had, before filing his application, witnessed the junior applicant's caveat, and entered into a contract with him, reciting that the article in issue was invented by the junior applicant, and providing for the assignment by the latter to him of a half interest in all letters patent issued to the latter for such article.

2. An employee who testifies, in an interference, for his employer, the senior applicant, is not, as against the junior applicant, estopped from claiming the invention upon becoming a party to the interference by filing an application himself after the employer's defeat became possible, where he was bound to assign his own invention to the employer, and believed that the latter's conception antedated his own. (Distinguishing *Lloyd* v. *Antisdel*, 17 App. D. C. 490.)

3. The prejudicial effect of witnessing the caveat of an adversary in an interference involving a form or centering device for concrete tubes and aqueducts is not avoided by the failure of the caveat to disclose the whole issue, where the part omitted is well known to both parties at the time, and understood to be part of the construction, and is public property, and the witness knows that the caveat contains substantially all the design work which the parties had presented to a contractor engaged in constructing an aqueduct.

4. Permission to a party in interference to amend his preliminary statement rests in the discretion of the Commissioner of Patents.

5. The refusal of permission to a party in interference to amend his preliminary statement with respect to the date of disclosure, *held* no abuse of the discretion of the Commissioner of Patents.

6. The Commissioner of Patents properly refuses to entertain, in an interference involving three parties, a waiver by the junior applicant of the limitation put upon the senior applicant by his preliminary statement, as to his date of disclosure, although the Examiner of Interferences and the Examiners in Chief have found in favor of both the senior and junior applicants as against the intermediate applicant, since the latter is still a party and is also affected by the waiver.

Nos. 931 and 934.    Patent Appeals.    Submitted November 12, 1914. Decided January 4, 1915.

HEARING on appeals from a decision of the Commissioner of Patents in an interference case.                    *Affirmed.*

The Court in the opinion stated the facts as follows:

This is an interference proceeding to which Jacob B. Blaw William Van R. Whitall, Charles D. McArthur, and Gillespie were original parties. Gillespie has dropped out.

The invention in controversy relates to steel forms or centering devices for concrete tubes and aqueducts, to retain the concrete in position until it sets or hardens and becomes self-supporting. The steel form or centering device is then removed by collapsing the same, and carried through the conduit already formed, and other forms on a carriage, to be set up for the next section of construction. To accomplish this the form is made in four sections hinged together, so that when collapsed it occupies a less cross-section area than the formed conduit, and can thus be readily transferred through the same on a truck, to be set up in an advance position when desired.

The issue is contained in the following counts:

"1. The combination, with a collapsible mold open at the bottom and comprising a pair of top sections having a hinged

connection at their upper edges, and a second pair of sections
hinged to the lower edges of the first sections, the sections being
stiffened by ribs and so arranged that the mold will maintain
itself in expanded position and permit the passage there through
of a truck carrying another mold, of a truck, and mechanism
carried thereby whereby the top sections may be moved up and
down and moved about their hinged connection to expanded or
working position.

"2. In combination in a conduit mold, open at the bottom
and having curved sides, a pair of top sections having a hinge
connection at their upper edges, and a second pair of sections
hinged to the lower edges of the first sections, stiffening ribs
carried by the sections, a truck, and mechanism carried by the
truck and adapted to raise and lower the top sections and to
swing such sections outward to expanded position, the connec-
tion at the hinged edges and the shape and curve of the
sections being such that the mold is self-supporting and unob-
structed and permits the passage therethrough of a truck carry-
ing another mold.

"3. The combination, with a collapsible mold open at the
bottom and comprising a pair of top sections hinged together
at substantially the center of the mold, and a second pair of
sections hinged to the lower edges of such first sections, the
sections being stiffened by ribs and hinged so that the mold will
maintain itself in an expanded position, of a truck provided
with means for raising and lowering the mold bodily, and with
contracting and expanding struts detachably secured to the
lower portion of each section."

Blaw filed January 18, 1909. McArthur and Gillespie filed
applications on May 25, 1911. Whitall filed June 8, 1910.
Blaw's preliminary statement alleged conception July 8, 1908,
disclosure to others December 1, 1908, and reduction to prac-
tice March 1, 1909. McArthur alleged conception August 10,
1908, drawings and disclosure August 20, and reduction to
practice January 20, 1909. Whitall alleged conception July
15, 1908, drawings on the same date, disclosure December 1,
1908, and reduction to practice in 1909.

The Blaw Collapsible Steel Centering Company is the assignee of Blaw and McArthur. The Ransome International Conduit Company is the assignee of Whitall. Ernest L. Ransome, the president of that company, filed an application for the same invention, and was in the original interference, but his application has been abandoned. Afterwards the application of Whitall was filed. The interference before McArthur filed was that of *Hermann* v. *Gillespie* v. *Ransome* v. *Blaw*.

Judgment has been given to Blaw against Ransome on the record.

Whitall was in the employ of the Ransome company, and filed his application after the defeat of Ransome. McArthur was then in the employ of the Blaw company, in which he entered about January 27, 1909, after negotiations of some days. His filing was after the Commissioner had refused leave to Blaw to amend his preliminary statement showing disclosure of his invention at a date several months earlier than December 1, 1908, by which ruling it had become possible for Blaw to be defeated.

At the time of McArthur's employment with the Blaw company, which owned Blaw's application, and to which he was under obligation to assign his own invention, the Blaw application had been filed. McArthur so understood and believed from representations made to him that Blaw's conception of the invention antedated his own.

Before the Examiner of Interferences, Gillespie having fallen out through failure to take testimony in support of his claim, the controversy was confined to Blaw, Whitall, and McArthur.

As between Whitall and McArthur the question was one of originality. Each claimed the invention, and his testimony was in direct conflict with the other. The Examiner decided in favor of McArthur on the weight of certain circumstances. It appears that Whitall was, in the summer of 1908, the seller of mineral paint. McArthur was a mechanical engineer and expert draftsman. Whitall claimed to have described the invention to McArthur, and he made the drawings, illustrating it by his direction. McArthur claims to have made the invention

himself. Each made claim to it, but has no witness to corroborate him.

On September 19, 1908, Whitall and McArthur entered into the following contract:

New York, Sept. 19, 1908.

The Subscribers agree as follows:

1st. W. V. R. Whitall, agrees to pay all expense in securing certain letters patent for sewer moulds invented by C. D. McArthur.

2nd. C. D. McArthur agrees to assign to W. V. R. Whitall one-half interest in all letters patent issued to C. D. McArthur for said moulds.

3rd. C. D. McArthur agrees to perform all mechanical work necessary for completion of said invention.

4th. W. V. R. Whitall and C. D. McArthur both jointly agree to surrender fifty-one per cent, if necessary of their interest in said letters patent for purpose of organizing company to manufacture and market said moulds.

5th. W. V. R. Whitall and C. D. McArthur both jointly agree not to dispose of any part of their interest without consent of the other.

W. V. R. Whitall,
C. D. McArthur.

Having been unable to agree as to the development and manufacture under the foregoing agreement, on December 17, 1908, McArthur wrote to Whitall submitting another proposition to him to the effect that if he would pay all expenses in securing letters patent on the trolley system of sewer molds, an application for which had been filed, and also all expenses of procuring letters patent on the curved molds, a caveat for which is now on file under date of November 23, 1908, subject Collapsing Form and Carriage for Molding Concrete, Sewers, Aqueducts, etc., that he would grant Whitall the right to manufacture and sell forms under these patents, and also the privilege to enter into manufacturing and selling agreements under these

patents with any firm or person which Whitall may become identified with; also permission to dispose of the rights as desired. No reply was received to this letter. It also appears that the caveat referred to describes the invention of the issue except the reinforced ribs. But it shows the several hinges with the means for collapsing and expanding them, and the means to transport the frames when collapsed. This caveat was shown to Whitall, who signed it as a witness.

These facts were held by the Examiner of Interferences to turn the scale in favor of McArthur. Having disposed of Whitall, he took up the case as between McArthur and Blaw, and awarded priority to Blaw. It appears also that this evidence of McArthur was given in the interference case of Blaw prior to McArthur's application and his entry into the interference. It was then inadmissible, but after his entry into the interference it was adopted by him as evidence in support of his own claim.

The decision was appealed by both Whitall and McArthur to the Examiners in Chief, who affirmed it as to Whitall and reversed it as to McArthur and Blaw, and awarded priority to McArthur. On appeal to the Commissioner that decision was affirmed.

*Mr. Paul Synnestvedt* for Blaw.

*Mr. Isaac B. Owens* for Whitall.

*Mr. J. C. Bradley* for McArthur.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

Without reviewing the evidence at length, as was done by the several tribunals of the Patent Office, we agree that, as between McArthur and Whitall, the decision is correct.

On this appeal Whitall contends that McArthur is concluded by the case of *Lloyd* v. *Antisdel*, 17 App. D. C. 490. If the question of originality had been between Blaw and McArthur, the latter might be estopped, but that is not the case, and it does not appear how Whitall can avail himself of the estoppel.

Whitall also seeks to escape the effect of his signature to the caveat, on the ground that the same did not disclose the ribs of the issue. It appears that these were well known to both McArthur and Whitall at the time, and that it was understood to be part of the construction. Moreover, the ribs had been used in other construction well known, and were at the time public property. It is clear that when Whitall signed the caveat he knew that it contained substantially all of the design work which Whitall and McArthur had presented to the attention of the contractors engaged in the construction of the New York aqueduct.

The Examiners in Chief noted the limitation put upon Blaw by his preliminary statement, and it is said that this point might be waived by McArthur.

Holding that Blaw was limited by that statement, McArthur was awarded priority over Blaw.

The Examiner of Interferences had decided in favor of Blaw on the ground that McArthur could not claim the reduction to practice that was made by the Blaw company at the time of his employment, and that he was not diligent in reducing to practice; wherefore Blaw was awarded priority.

The Examiner held that McArthur's employment was by Blaw, and that the reduction to practice could not redound to his benefit, as Blaw was his employer. The Examiners in Chief found that both Blaw and McArthur were employees of the Blaw company; that McArthur had only recognized Blaw's claim of priority to the extent that he took the word of Blaw and the word of the executive officers of the company to the effect that Blaw conceived the invention at a date before he did, and that this was not the recognition of an adverse right of an employer, and does not, therefore, constitute an estoppel against McArthur. They further held that the Blaw company was in effect from the beginning the assignee of McArthur, and any reduction to practice by the Blaw company in which McArthur had a part should accrue to the benefit of McArthur. The Blaw company reduced the invention to practice. The record shows that the reduction to practice did not commence

until after McArthur came into the employment of the company, and that without question it shows that McArthur was the moving spirit and designer in this reduction to practice. Therefore it was held that he was entitled to the reduction to practice, whereupon they reversed the Examiner of Interferences, and awarded priority to McArthur.

Afterwards McArthur waived the protection afforded to him by Blaw's preliminary statement with respect to his date of disclosure, and agreed that, in so far as McArthur is concerned, Blaw should be entitled to any date of disclosure which the Commissioner of Patents should find has been adequately proved by Blaw's record. On appeal to the Commissioner, he affirmed the finding as between McArthur and Whitall, and refused to consider the waiver of McArthur of the date of the preliminary statement of Blaw, and affirmed the decision awarding priority to McArthur.

The matter of permitting an amendment to a preliminary statement is one that is in the discretion of the Commissioner of Patents, and there seems to be no abuse of it in this instance. The Commissioner was also right in not entertaining the waiver of McArthur because Whitall was still a party and was also affected by that waiver, notwithstanding the finding of the Examiner of Interferences and the Examiners in Chief.

With that statement in the way, Blaw's evidence of an earlier conception was not entitled to consideration, and therefore the award to McArthur was right.

The decision is affirmed, and the clerk will certify this decision to the Commissioner of Patents as required by law.

*Affirmed.*